UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HASSAN TARIQ ALI,            )
                             )
        Plaintiff,           )   Case No. C08-1767-RAJ-BAT
                             )
    v.                       )   **REPORT AND**
                             )   **RECOMMENDATION**
MICHAEL ASTRUE, Commissioner of the )
Social Security Administration, )
                             )
        Defendant.           )

Plaintiff Hassan Tariq Ali seeks judicial review of the denial of his application for disability insurance benefits by the Commissioner of the Social Security Administration. Plaintiff presents the following issues: (1) whether the ALJ'S determination that Mr. Ali can stand and walk for two hours at a time and up to six hours in a regular workday is supported by substantial evidence, given the medical records, (2) whether the ALJ gave clear and convincing reasons for rejecting Mr. Ali's testimony, and (3) whether the ALJ gave proper consideration to the testimony of Maryland Ali. Dkt. 14 at 1. For the reasons set forth below, the undersigned recommends that the Commissioner's decision be REVERSED and REMANDED for an award of benefits.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, who is currently 58 years old, has a high school diploma and two years of college education. Tr. 55, 79. He has past work experience as a counselor in a psychiatric halfway house. Tr. 313. In November 2004, plaintiff applied for disability insurance benefits alleging disability as

REPORT AND RECOMMENDATION – 1

of June 15, 1998; plaintiff meets the insured status requirements of the Social Security Act through December 31, 2003. Tr. 32, 58. In his opening brief, plaintiff states July 23, 2003 is the appropriate onset date of disability. Dkt. 14 at 2. The Commissioner does not oppose this amendment; the Court therefore deems July 23, 2003, as the onset date of disability. Dkt. 16 at 3. Plaintiff's application was denied initially and on reconsideration. Tr. 36-38. After a hearing, at which plaintiff and his wife testified, the ALJ issued a decision on May 22, 2006, finding plaintiff not disabled. Tr. 18-29. The Appeals Council denied review of that decision, making it the Commissioner's final decision under 42 U.S.C. § 405(g). Tr. 4-7.

Plaintiff appealed and on March 31, 2008, this Court reversed the decision. Tr. 344. The Court found, at step four, "[t]he ALJ did not carry out his own evaluation of the functional demands and job duties of the Plaintiff's past relevant work." Tr. 353. The Court ordered the Commissioner to make specific findings regarding the functional demands of the plaintiff's past relevant work either as actually performed by him or as generally performed in the economy. Tr. 353. The Appeals Council remanded the case to the ALJ for further proceedings consistent with this Court's order. Tr. 361-62.

In August 2008, the ALJ held the remand hearing; Plaintiff and a vocational expert testified. Tr. 474-95, On October 8, 2008, the ALJ issued a decision finding plaintiff not disabled. Tr. 332-43. The Appeals Council declined to assume jurisdiction of the case, making the ALJ's October 2008 decision the Commissioner's final decision in this case. Plaintiff now seeks judicial review of that decision.

## II. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that

REPORT AND RECOMMENDATION – 2

plaintiff did not engage in substantial gainful activity during the period between June 15, 1998, plaintiff's alleged onset date, and December 31, 2003, his date last insured. Tr. 328.

At step two, the ALJ found that through the date last insured, plaintiff had the following severe impairments: degenerative disc disease of the spine with stenosis, and hepatitis C. *Id.*

At step three, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 329.

Before proceeding to step four, the ALJ found that through the date last insured, plaintiff had the residual functional capacity to perform light work and that he could occasionally climb ramps, roofs, ladders, scaffolds, and stairs, and he had to avoid concentrated exposure to vibrations or hazards. *Id.*

At step four, the ALJ found that through the date last insured, plaintiff could not perform his past work. *Id.* at 341.

At step five, the ALJ found that plaintiff was not disabled, because he could perform other light work as an office clerk or night patrolman. *Id.* at 342.

### III. STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that

might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that the Court must uphold. *Id.*

## IV. DISCUSSION

**A.  The ALJ did not err in evaluating Dr. Williams' medical opinions.**

Plaintiff contends the ALJ erred by failing to consider Dr.Williams' diagnosis. Dkt. 14 at 12-13. The Court disagrees. The ALJ's 2008 decision adopted the discussion contained in the 2006 decision regarding plaintiff's impairments. Tr. 339. The 2006 decision stated. "Dr. Williams assessed claimant with significant spondylopathy with neural foraminal stenosis at multiple levels and neural foraminal stenosis; radiculopathy; chronic lumbarosacral strain; and sleep disruption." Tr. 24. This indicates the ALJ did consider Dr. Williams' diagnosis.

Plaintiff also contends the ALJ incorrectly described Dr. Williams' examination of plaintiff as "hamstrings were tight, but the exam was otherwise mostly normal" and did not acknowledge findings that plaintiff had "limited range of motion, tight hamstrings, decreased deep tendon reflexes and a weak left tibialis anterior muscle." Dkt. 14 at 14. Again, the Court disagrees. The 2006 decision described Dr. Williams' examination as finding plaintiff had pain radiating down his right leg and along the lateral thigh to the foot; that plaintiff's right leg gave out while walking; that plaintiff had pain on prolonged walking; that plaintiff's hamstrings were tight; and that plaintiff had bilaterally weak hip flexors. Tr. 24. The Court finds this a sufficient description of Dr. Williams' examination.

Plaintiff also contends that Dr. Williams' August 13, 2003 treatment notes establish that

REPORT AND RECOMMENDATION – 4

plaintiff has "difficulty standing and walking" and can therefore only perform sedentary work. Dkt. 14 at 12. Dr. Williams never gave an opinion of whether plaintiff was limited to light or sedentary work. Her notes do not state plaintiff has "difficulty standing and walking." *Tr.* 159. Rather, they state plaintiff's "right leg gives out while walking . . . pain is brought on by prolonged walking." Whether these impairments limit plaintiff to sedentary work is unclear; Accordingly, the Court concludes the ALJ did not err in failing to find these notes established plaintiff could only perform sedentary work.

**B.     The ALJ did not err in evaluating the medical opinions of Dr. Peng.**

The Court has previously found "the ALJ has given specific and legitimate reasons supported by the record for discounting Dr. Peng's opinion." Tr. 358. Accordingly, the ALJ did not err in discounting Dr. Peng's opinion in the 2008 decision. Tr. 342.

**C.     The ALJ erred in evaluating plaintiff's credibility.**

Plaintiff contends the ALJ erred by failing to give clear and convincing reasons for rejecting his testimony. Dkt. 14 at 17. At the 2006 hearing, plaintiff testified that in the past he played professional basketball in the Philippines (Tr. 318); That he had back pain that spreads to his legs and cause them to become numb (Tr. 315-16); That he cannot help much with housecleaning because he cannot stand long and activities such as vacuuming increase his back pain (Tr. 316); That he tries to walk for exercise but after a block his back and legs begin to give out (*Id*. at 317); That sitting makes his back pain even more severe (*Id.*); That he can stand about ten minutes before becoming uncomfortable (*Id*. at 323); That when he goes grocery shopping with his wife, he has to lean on the cart and then ends up going to the car to wait for his wife to finish shopping; (*Id*. at 321); That his pain worsens if he carries more than 10 pounds (*Id.* at 323); And that due to his hepatitis he would fall asleep on the job (*Id.* at 325).

REPORT AND RECOMMENDATION – 5

At the 2008 hearing, plaintiff testified about his mental health, his past work, and how his social activities, ability to do household chores and ability to do any work have declined since the 2006 hearing. Tr. 478-86.

In evaluating plaintiff's testimony, the ALJ did not find any evidence of malingering and stated "I find the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms." Tr. 340. Consequently, the ALJ's reasons for rejecting the claimant's testimony as to the severity of symptoms must be clear and convincing and supported by substantial evidence. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1995). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted).

The Commissioner contends[1] the ALJ gave the following proper reasons to discredit plaintiff's testimony: Plaintiff alleged disability since 1998, but Dr. Peng noted in May 2001 plaintiff said he was "generally too healthy to go the doctors' office." Tr. 140. Dr. Peng also noted in 2002 that plaintiff was "self-employed;" Tr. 178. Dr. Williams' medical records noted plaintiff cannot work as a janitor, even though plaintiff had never worked as a janitor; Tr. 157, 159, 231, 259. Plaintiff indicated in July 2003, he walked and shot baskets; Tr. 131. Dr. Williams indicated in January 2005, she spoke to plaintiff's wife who said plaintiff was working outside; Tr. 219. And a June 2005 medical note indicated plaintiff reported running a shirt screening business. Tr. 253.

Based on these reasons, the ALJ concluded plaintiff's statements regarding the degree of his impairment are "not credible to the extent they are inconsistent with the medical functional

---

[1] Dkt. 16 at 11.

REPORT AND RECOMMENDATION – 6

capacity assessment [that plaintiff can perform light work]. In so concluding, I am adopting the credibility assessment from the prior decision." Tr. 340.

The ALJ did not give clear and convincing reasons for rejecting plaintiff's testimony. First, there is nothing inherently unbelievable about plaintiff's testimony. Second, the reasons the ALJ gave for rejecting plaintiff's testimony do not undermine plaintiff's complaints. The ALJ's reasons fall into three broad categories: 1) work, 2) evidence of fabrication, and 3) activity level. Under the work category, are the notations in plaintiff's medical records about being self-employed and running a shirt screening business. However, without knowing more about what this employment involved, these notations shed no light on whether plaintiff could perform light or only sedentary work.

Under the evidence of fabrication category are notations in plaintiff's medical records that he cannot return to work as a janitor, and how plaintiff alleged disability since 1998 but told Dr. Peng in 2002 he was too healthy to go to the doctor. These notations do not establish that plaintiff was not truthful in his testimony. Dr. Williams' records noted that in her opinion, plaintiff could not return to work as a janitor — even though plaintiff did not work as a janitor. If plaintiff had something to gain by claiming past work as a janitor, this might be evidence of untruthfulness. But plaintiff had nothing to gain by making such a claim because janitorial work is medium or heavy work, not sedentary work. *See e.g*. DOT 382.664-010, 381.137-010, 381.687.014. The discrepancy between plaintiff's alleged disability since 1998 and Dr. Peng's 2002 medical record would be probative of truthfulness if plaintiff was still claiming that he became disabled in 1998. But because the parties now agree plaintiff's onset date is July 2003, the discrepancy is not clear and convincing evidence of fabrication.

And finally, under the activity level category is the notation that plaintiff walks and shoot

REPORT AND RECOMMENDATION – 7

baskets. Plaintiff testified that he walked to get exercise but that he could only go a block before having to stop due to pain. The notation, which is nothing more than a bare-bones statement, does not rebut plaintiff's testimony or show that plaintiff can walk and stand for long periods of time. The notation that plaintiff shoots baskets similarly does not rebut plaintiff's testimony or show that plaintiff can walk and stand for long periods of time. Without knowing more about how long or often plaintiff shoots baskets, the notation sheds no light on whether plaintiff could perform light or only sedentary work.

Accordingly, the Court finds the ALJ erred by failing to give clear and convincing reasons for rejecting plaintiff's testimony.

**D.     The ALJ erred in discounting the testimony of Plaintiff's wife.**

Plaintiff contends the ALJ did not properly consider Mrs. Ali's testimony. An ALJ must take into account lay witness testimony about a claimant's symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). To discount lay-witness testimony, the ALJ must provide reasons germane to each witness. *Id*.

The ALJ adopted the credibility assessment from the 2006 decision. Tr. 340. This is problematic. In the 2006 decision, the ALJ found Mrs. Ali's testimony did not support plaintiff's claim of total disability. Tr. 28. However, in the 2008 decision, the issue was not whether plaintiff was totally disabled but whether plaintiff had the residual functional capacity to perform light or only sedentary work. Accordingly, the Court finds the ALJ erred in failing to assess Mrs. Ali's testimony as to whether plaintiff can perform light or only sedentary work.

**E.     The Commissioner has failed to meet his burden of proof at step five that plaintiff can perform other work that exists in significant numbers in the national economy.**

At step four, the ALJ found that plaintiff could not perform his past work but had the

residual functional capacity to perform "light work."[2] TR. 341. Because plaintiff could not perform his past work, the Commissioner had the burden at step five to show that plaintiff could perform some other work that exists in significant numbers in the national economy, taking into consideration the plaintiff's functional capacity, age, education and work experience. 20 C.F.R. §§ 404.1520(f), 404.1560(c); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). The record shows the Commissioner failed to meet this burden.

The ALJ stated plaintiff did not have the residual capacity to perform the full range of light work due to a number of limitations.[3] Tr. 342. Because plaintiff could not perform the full range of light work, the ALJ called a vocational expert to testify whether jobs existed in the national economy for an individual with plaintiff's personal characteristics and limitations. *Id.* Based on the vocational expert's testimony, the ALJ found plaintiff was capable of working as an office clerk (DOT code 239.567-010) or night patrol officer (DOT code 372.667-938) and therefore not disabled. *Id.*

The testimony of the vocational expert does not establish that plaintiff could perform light work or that there are significant jobs in the national economy that plaintiff could perform. The ALJ asked the vocational expert to identify jobs in the national economy that are light, that are unskilled, that involve only occasional use of ramps, stairs, ladders ropes and scaffolds and do not involve concentrated vibration or hazard exposure. *Id.* at 491-92. The vocational expert testified to two such jobs. While the two jobs that the vocational expert identified are classified in Dictionary of Occupational Titles ("DOT") as light work, the actual work the expert described and which the expert thought plaintiff could perform was something less than light work.

First, the vocational expert testified "I believe that the office clerk, the delivering of mail in

---

[2] Light work is defined in 20 C.F.R. § 404.1567(b)
[3] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

REPORT AND RECOMMENDATION – 9

a building, such as this he would have that cart to lean on, and they simply give up the mail. They have to be in elevators. They can't take a cart and go downstairs, so that I believe would fit. That one is light and unskilled." *Id*. at 492. The vocational expert testified the DOT number for that job is 239.567-010. However, the work the expert described is something less than light work; it requires use of elevators only, is confined to office buildings, is limited to very light objects like mail in a cart, and allows for rests and the chance for plaintiff to be supported by leaning on a cart.

The job of office clerk as defined in DOT 239.567-010 requires far more than the work the vocational expert said Plaintiff could perform. Under the DOT, an office clerk, must not just sort or distribute mail but may have to work in a "business office of a commercial or industrial establishment" where he or she "may have to deliver things to other business establishments," may have to act as the designated messenger or "runner" between different offices. *Id.* This type of work also exceeds the limitation the ALJ placed on the expert to identify jobs involving only occasional use of ramps, stairs, ladders, ropes and scaffolds. The DOT job description does not contemplate such limitations or the use of assistive carts upon which the worker can lean on.

Second, the vocational expert testified that "night patrol," DOT number 372.667-038, "fits in very well," and that "it can be learned in one or two nights on the job and allows the person to sit and stand every 15, 20 minutes." *Id.* The vocational expert stated night patrol is "light sedentary" and described the job as "you just walk around in this building at night and rattle doors, see if there's a light on, and if there is you hit 911 and you go back to your computer, but the computer is just a monitor showing people coming and going." *Id*. at 403.

This description involves something less than light work; it contemplates being able to sit and stand every 20 minutes, not much walking, handling of very light objects, making phone calls and sitting at a desk looking at a monitor. In contrast, the job as defined in DOT 372.667-038

REPORT AND RECOMMENDATION – 10

requires far more than the work the vocational expert said plaintiff could perform. Under the DOT, the night watchman job involves many things including guarding industrial or commercial property against fire and crime; patrolling buildings, grounds of industrial plants, docks, and work sites; warning violators and apprehending or expelling "miscreants;" performing janitorial duties; tending furnaces and boilers; and patrolling with a guard dog or weapons in a wide variety of circumstances. *See* DOT 372.667-038. The type of work under this DOT also exceeds the limitation the ALJ placed on the expert to identify jobs involving only occasional use of ramps, stairs, ladders ropes and scaffolds. The DOT job description provides for no such limitations.

In short, the types of jobs the vocational expert testified Plaintiff could perform involved work that was something less than light work. Because the Commissioner has failed to produce evidence that any job categorized as light work, with the limitations the ALJ himself imposed, was available to plaintiff, and only produced evidence that less than light work was available to plaintiff, the use of grid rule 202.14 for concluding plaintiff was not disabled was not based on substantial evidence.

The Commissioner has failed to meet his burden of proof at step five that plaintiff can perform "light" work that exists in significant numbers in the national economy. Rather the vocational expert's testimony shows plaintiff can perform "sedentary work." 20 C.F.R. § 404.1567. Plaintiff was 52 years old (Tr. 55) on the alleged onset date of disability, July 23, 2003. Accordingly, pursuant to Rule 201.14 of the Medical-Vocational Guidelines, the Court concludes plaintiff was disabled as of the onset date of disability. See also 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1.

**F.     This matter should be remanded for an award of benefits.**

Because the ALJ has committed reversible error, the Court has discretion to remand for

REPORT AND RECOMMENDATION – 11

further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may order a remand for further administrative proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Or the Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). This occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.

The Commissioner failed to meet his burden of proof at step five that plaintiff can perform "light" work that exists in significant numbers in the national economy. There are no outstanding issues to be resolved before a determination of disability can be made, and the ALJ would be required to find plaintiff disabled on the record herein and the conclusions that have already been made. Plaintiff filed his initial application for benefits in November 2004, almost five years ago. Under these circumstances, this matter should be remanded with a direction for the award of benefits. Because the parties agree that July 23, 2003 is the date of onset of plaintiff's disability, the Court directs this date be used for the calculation of benefits.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and

///

////

REPORT AND RECOMMENDATION – 12

REMANDED for an award of benefits. A proposed order accompanies this Report and Recommendation.

DATED this 24th day of June, 2009.

              /s/ Brian A. Tsuchida
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION – 13